May it please the court, the United States asked this court to reverse and remand this case because the district court's downward departure for aberrant behavior, which is not supported by the facts in the case or the law applicable, which is U.S. Sentencing Guideline 5K2.20. This significant case in that the departure resulted in reduction of the defendant's sentence from what would have been a Zone Z sentence, excuse me, a Zone C sentence and would have required mandatory incarceration to a Zone A sentence, which allowed a probationary sentence. The standard of review is de novo pursuant to the recent congressional enactment in the PROTECT Act, which was signed by the President in late April. Even under the more deferential standard of review in place before enactment of the PROTECT Act, of course, it was abuse of discretion. The defendant was not entitled to an aberrant behavior departure. To qualify for an aberrant behavior departure under 5K2.20, which was adopted by the Sentencing Commission in 2000, there are four prompts that are necessary for a district court to make an aberrant behavior factor departure. First, there must be a determination that the case was extraordinary, and as our briefing indicates, there isn't anything extraordinary about Ms. Vieke's case. This is a garden variety identity theft and credit card fraud case. The Court did not make a finding in the record that there was anything extraordinary about this case. MS. VIEKE. Counsel, let me stop you right here and ask whether the objection which the government made was adequate. JUDGE LEBEN. Your Honor, the government, as you note, did object to the departure, and the Court recognized that in two different places in the transcript. It would be preferable, I think, to have had a stronger objection that would have set forth the multiple bases for the. . . JUDGE LEBEN. Do you think the people have a weaker objection? It's about as weak as I've heard. It's just not as strong as it should have been, but I think that the thing that this Court should focus on is the relative roles of the parties. Certainly, it's the government's obligation and the defendant's obligation to bring to the Court's attention applicable law and facts. The facts were well demonstrated in the record, and there wasn't anything that the government needed to do to advance those. But ultimately, sentencing is the province of the district court. The district court has to make findings and apply those findings to the law. And the findings in this case, the facts, beginning with what's in the plain language of the indictment, the fact that the fraud period extended well over three years. You see, it seems to me it's sort of an odd thing that the judge is sitting there thinking, this is kind of an aberrant situation with the gambling factored in here. And then the United States says, we make a pro forma objection. We wish we didn't have to make it. We have to make it, period. So the district judge is thinking, well, this really falls within the category of aberrant behavior. Nobody stands up and says, you know what, there's kind of three aspects to aberrant behavior, and one of them relates to continuity or spontaneous and sporadic nature. And this really doesn't meet it here, or it does. So that issue isn't even before the court. So it seems difficult that the district judge is really not in a position to have to make all those determinations. Why wouldn't we at least send it back? Well, ultimately, the district court's got to take the law, as either the Congress or the Sentencing Commission have put it in place, and make a determination as to whether, whatever the facts are, allow it to have the discretion to undertake a departure factor. So in this case, and you can see from the de novo standard review that you now have, there isn't anything in this record that would allow the district court, if you remanded it, to make an aberrant behavior departure. Can that be waived by the government? If the government failed to make an objection here, I wouldn't be standing before you. But the government made an objection and said that it was objecting to the departure. It objected, but not on the specific basis that any of the requirements were not met. Well, it objected to the diminished capacity departure, and then it objected and said, we oppose the departure for aberrant behavior. You are correct. The record does not reflect saying that it needs to be extraordinary or there needs to be limited duration. But, again, that's the law that the judge has to apply. The government said it was going to object. The court noted the objection two places after that, and the government preserved the record based upon that objection. Counsel, what the government said was that they would always oppose a reduction for aberrant behavior. Now, that is kind of a really gloves-down kind of thing, because aberrant behavior can be a basis for downward departure. Now, there are several cases which tell us that an objection is not satisfactory if it doesn't give the specific reasons which are legitimate reasons. There's a case from the 11th Circuit, the Maurice case. Are you familiar with it? No, I don't believe that that was in the briefing. I would like to address your point, Judge Fletcher, because I think it is fair. The statement in the record is not an accurate statement of the policy of the U.S. Attorney for the District of Montana. Well, but it was the statement of a spokesperson for the… I understand. And the statement, the policy statement that's been promulgated is to say when the Congress and the Sentencing Commission have restricted the discretion of district courts, it would be unseemly if the United States Attorney's Office had varying standards without any sort of management based upon the views of an individual assistant U.S. Attorney. So the policy is that if there is a viable basis for an aberrant behavior departure, then that needs to be brought to my attention, and that way we can calibrate this, and we have fairness and equity across the district. We don't have AUSA A giving some sort of different treatment to a defendant than AUSA B would be doing. I understand that. I assume that this might have been a little bit of a paraphrase, obviously, but it's the only one the judge had. I actually read it a little bit differently than Judge Fletcher, but in a way that's not particularly favorable to you because the AUSA said it's a policy to object to downward departures, period. So once they said that, it just said we object to any downward departure. And then he went on to say, of course, since you're asking for it on aberrant behavior, we have to object. And he says, I don't have any discretion in making recommendations. I am chafing under this bid, but it's a bid I cannot remove. So in a way it's kind of almost worse. He doesn't even just say directly I'm objecting to the aberrant behavior. He just says we have to object to any downward departure. So here I am. I object. And then, you know, he doesn't give the court anything even with respect to aberrant behavior. So how could that be a preservation of objection? Well, I'd ask the court to take the long view, which is there are a number of sentencings in this district court, the District of Montana, in which departures are raised by my esteemed colleague, Mr. Gallagher, and his colleagues on a regular basis. And certainly there are times when we have stipulated or not objected to downward departures. So the fact that this statement, which is inaccurate representation of what the office's policy is, is not something that should be of, you know, the district court realizes that there are times when departures have been something that we've got along with. And I credit you with that. It's just that as to this particular defendant, this is the only record we have. And so this is the only objection that we can evaluate. Well, our case here is that an objection was made and that the district court needs to be able to apply the law to the facts that it's presented with. We did not agree to the departure. We opposed the departure. And although the facts missed three prongs of the test, then the court still made the departure. This is not a situation where you can look at the Sentencing Commission statistics. We have a number of non-substantial assistance departures in the District of Montana every year. Right. We know all that. I'm just trying to figure out what we do with it in this case. Yeah. I mean, and it's not like this case sets the policy for your office. It just potentially sets the guidelines for this case for this one individual because it happened to be stated in this case. Well, and again, if the court has the liberty of deciding that it's not going to apply the law merely because there isn't a complete recitation of all the bases by the government as to why there isn't a viable departure, that's a problem. Or any of the bases. Right. Because he ruled out a departure on 5K2.13 and then came back and said, but I'm going to depart on this without making any findings whatsoever as to what 5K2.20 means. And so I think it's certainly problematic if the district court can say, well, I don't think the objection is fully developed, and therefore I'm going to ignore what the law requires. Well, I'm going to read to you from the Maurice case, which is out of the Eleventh Circuit, which seems to be quite sound. It says, the district court complied by asking for objections after imposition of the sentence. The appellant responded, we would reserve an objection as to the departure. This statement taken alone is not sufficient to preserve the issue for appeal because Jones, this is another Eleventh Circuit case, requires a clear explanation of the basis of the objection. Well, we didn't say we would reserve. We said we'd object. And certainly in scouring the authority of this circuit, I couldn't find any authority that said there needs to be a fully developed objection that sets forth multiple or at least an individual basis for that departure. And again, if that becomes the law, I think that's troubling in that depending on vigorous or complete advocacy, the district court is somehow then not obliged to apply the applicable law. And we did object to the basis of the departure. And with that, I will conclude. And I meant to reserve some time, which I see I've lost, but if the Court wishes to hear from me after Mr. Gallagher, I'd appreciate the opportunity. All right. Good morning, Your Honors. I'm Tony Gallagher. I'm the federal defender from Montana. And it's my privilege and honor to represent Lena McCracken-Veek. Lena is a gambling-addicted, emotionally frail 44-year-old woman who really admitted that she misused her parents and her husband's identity and credit. Over a brief three-and-a-half-year period, she lost over $50,000 at various Montana casinos. She committed her crime not out of animus or greed, but out of compulsion. Her case is, therefore, extraordinary in that regard. And as an aside, it is extraordinary, Judge McAllen, that I'm the appellee. Your Honors, I'd like to address first the government's reference twice during its argument that the 28J letter it filed indicates and shows this Court that they have a de novo review standard rather than an abuse of discretion standard, which normally applies under Kuhn. I apologize sincerely for not responding to that 28J letter. I was in trial last week, did not review that letter until this weekend, was in court all week, and did not have an opportunity to respond to Mr. Mercer's letter. I would ask the Court, if the Court is considering applying a different standard than that applied in Kuhn, that they allow the appellee, Ms. McCracken-Veek, an opportunity to fully examine the applicability of the PROTECT Act and its Feeney Amendment provisions in a post-argument response. We feel that there may, in fact, be ex post facto separation of powers and other issues involved in such a switch of forces in midstream. Also, we believe that the PROTECT Act itself and the Feeney Amendment provisions call into question the constitutionality of the guidelines altogether. If the Court finds... But that's a different issue than the standard of review, the second issue that you raised. That is indeed correct, Your Honor. Well, it's a very complicated issue, and I hope we don't have to get there in this case. I certainly hope so, too, Your Honor. If the Court finds, however, that the new de novo standard should apply, which Ms. Veek does not concede there is sufficient information in the record, that is, the entire record, including the supplemental excerpts of records submitted by Ms. Veek and the PSR that accurately show that the district court made a departure decision, a correct departure decision, especially in light of the fact of the government's lack of development of the record. All of the judges have indicated earlier during Mr. Mercer's argument that there is a distinct lack of force behind the assistant United States attorney's objection at the time of the sentencing. But what's more is that if there's an examination of the factual bases, there's also an examination that the United States did not respond during the objection process, the dispute resolution process. There was nothing in response to Ms. Veek's memorandum in aid of sentencing. There was nothing in response to the examination and report of examinations submitted with that memorandum indicating that Ms. Veek had a gambling addiction problem. And it was only at the time of sentencing that the government made this rather, if you'll excuse the colloquialism, lame objection to a downward departure based on aberrant behavior. The Court has already pointed out in a reference to Eleventh Circuit case, which frankly, Your Honor, I have not read, but certainly supports my position, that it is incumbent upon the United States, at least in some respect, to develop a record indicating the bases for its objection, indicating that there is a lack of facts in the record, which would support the district court's finding, ultimately finding in the defendant's favor in this case, of an aberrant behavior departure. Without that development of the record, then how can this Court properly rule? Your Honors, if there are rules and guideline provisions which describe a dispute resolution process, and there are, if the district courts rely on that process to explain and narrow the issues, and they do, then how can the United States complain that the record is not pristine, that the record does not include all the information that this Court requires to make a studied judgment of the aberrant behavior departure here? How can the United States raise such a strident objection now when they didn't do what the rules and the guidelines require before? I think that it puts this Court in a very difficult position, regardless of the standard of review, in making a determination now on the propriety of Judge Malloy's, Chief Judge Malloy's, decision to depart in Lena's case. Let me ask, if we somehow resolve this issue on the objection, and even if it was plain error, because some objection was made, but plain error is present when there's a sentence that doesn't meet the legal requirements, what evidence in the record is there that would suggest that this conduct was limited duration? Well, I realize that that's probably one of the biggest problems that I have in supporting this particular aberrant behavior departure. First, I would point to the fact that there is no definition of limited duration in the new guideline, the one that was established in 2000. And certainly, the United States has cited to some cases which talk about the duration of other offenses, 15 months, 18 months, and so on. But without that definition of limited duration, what do we have to look to? What we have to look to is put this entire case and Ms. McCracken Veek's entire life in perspective. It was indeed a three-and-a-half-year period that she engaged in credit card fraud and identity theft with her parents and her husband's money, and her parents and her husband's credit. That three-and-a-half-year period, however, pales in comparison to the duration of her life, which before that time was law-abiding, and as Chief Judge Malloy pointed out, since the time of the realization of her error was law-abiding. In other words, she returned... But can you collapse those two requirements? Because that's a separate inquiry which seems to be easily met here. I think that's the law-abiding part, but I thought the duration portion requires us to look separately at that issue. Well, certainly, Jennifer Gowan, you must look separately at that issue, but that doesn't mean that the facts that apply to her good life before and after these events must be ignored. Those facts help us put in perspective the limited duration of the time period of her illegal activity. There are many things that we look at in life... Okay, so I'm just... Are you saying the limited duration means, like, if you're 90 years old and the crime lasts for five years, that that's kind of a small part of your life, and if you're 25 years old and it lasts for five years, that's a fifth of your life, and we look at it differently that way? Or is it the how long did the crime take just in general? I think it's the former rather than the latter. There is no definition in the statute. There is no definition in the commentary, and the amendments don't talk about how to define limited duration. I think that a common definition of limited could have, as the court has indicated, the definition that I give it, and that is that it's limited in reference to a person's lifespan, also in reference to the lifespan of their otherwise crime-free activity in life. Therefore, the three-and-a-half years pales in comparison to her 44 years of good... or her 41 years of good living prior to this offense. But what do we do with the word transaction? Well, then, once again, I think that we must look at the new statute itself. The new statute has done away with the totality of the circumstances, and I believe has, in a way, talked more flexibly than the old language in the old cases, which talked about spontaneity, talked about single transaction. Now, that word transaction, as in this particular case, involves one criminal event. Now, Mr. Mercer is exactly right, and I'm probably arguing on his behalf here, that there were a number of different overt acts which went into that criminal transaction, but it doesn't change the event itself. That was her criminal conduct. That was her criminal transaction, if you will. That's what she was really after, was the identity to get the money, to spend the money, to go gamble. And so, when you're talking about a single transaction, that's the criminal conduct here. This Vick stole her parents' identity. That's the transaction. What the other events were that led to that, the number of times that she may have used the card, the number of times that she gambled, I think pales in comparison to the fact that the transaction is the theft of identity, and that's what she wanted to prove. Your Honors, I would urge you to view this case as extraordinary because of Ms. Vick's background, because of the circumstances of her theft, and because of the entire record, as explicated not only in the PSR, which was an excellent PSR in this particular case, but also those letters that were submitted on Ms. Vick's behalf, and the report of examination by the counselor who examined Ms. Vick. That admission, being unrebutted and unrefuted by the government, is before you for your consideration, and I ask that you affirm the District Court's departure decision. Thank you very much. Thank you. Mr. Mercer, I'll give you an extra minute, if you'd like, for rebuttal. Thank you, Your Honor. Because the standard review is de novo, and the interpretations of this court as to that term, this court needs to look anew as to the record in the District Court, and the law that underlies everything that happened in this case. And with that fresh look, the government's proposition for the court is that it's impossible for this court to find that an aberrant behavior departure is viable, because, as your discussion with Mr. Gallagher indicates, not only was this not of limited duration, it extended more than three and a half years, but it was done with a significant amount of planning. So even if the court finds that these circumstances constitute an extraordinary case, as required by 5K2.20, two of the three prongs that are required by the definition of aberrant behavior are missing. And because the standard review . . . How do we know it was extraordinary planning? Extraordinary planning? How do we know that? Well, first of all, beginning in 1997, she took her parents' driver's license, Social Security information, went out and acquired 12 different credit cards, and that took an extraordinary amount of planning. Then after she did that, she went out and utilized these cards over and over again, concealing the behavior from not only her parents, but from the financial institutions that were victimized for over $51,000. So in terms of limited duration, to say that a crime that lasted over three and a half years is of limited duration, that exceeds in a significant way terms of crimes that this Court's already found are not of limited duration, and those things are cited in our opening brief. Thank you. Thank you. United States v. Meek is submitted.
judges: Hug, B Fletcher, McKeown